**Kent BAKER, Plaintiff,**

v.

**URBAN OUTFITTERS, INC. and Urban Outfitters Wholesale, Inc., Defendants.**

**No. 01 CIV. 5440(LAP).**

United States District Court, S.D. New York.

March 31, 2003.

Stephen A. Weingrad, Weingrad & Weingrad, New York City, for Plaintiff.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

Plaintiff Kent Baker ("Baker") brings this action against defendants Urban Outfitters, Inc. and Urban Outfitters Wholesale, Inc. (collectively, "defendants" or "Urban") for copyright infringement arising out of Urban's failure to seek permission to use a photograph taken by Baker as a disposable paper insert in one of its plastic picture frames. Presently pending are four separate motions: (1) plaintiff's motion for summary judgment on the issue of copyright infringement; (2) defendants' motion in limine to exclude the expert testimony and expert report of plaintiff's damage expert, Kathy Eng; (3) defendants' motion for partial summary judgment on the issue of damages; and (4) plaintiff's Rule 11 motion. For the reasons set forth below, plaintiff's motions are denied, defendants' partial summary judgment motion is granted, and defendants' motion in limine is granted.

## BACKGROUND

Though the briefing in this case has been substantial, the facts giving rise to

this action are reasonably brief and straightforward.

### 1. The Photograph

Baker, a professional photographer, took a series of photographs during a four-week road trip along Route 66 in April and May of 1999. (May 7, 2002 Deposition of Kent Baker, at 27). During the course of the trip, Baker took a photograph (hereafter, "the Photograph") of a man in a cowboy hat, Mark Anthony Howells, leaping from one boxcar to another. (Defendants' Statement of Material Facts Not in Dispute, hereafter "Defs' Statement," at ¶ 1). A collection of the photographs from Baker's trip was subsequently published in 1999 in a hardcover book entitled "66/99 An American Road Trip" (hereafter, "66/99"). (Defs' Statement ¶ 3).

Between September 2000 and March 2001, Urban used the Photograph as the basis for a disposable paper insert (hereafter, the "Paper Insert") in its 8″ × 10″ plastic picture frame products. (Plaintiff's Statement of Undisputed Material Facts, hereafter "Pl's Statement," at ¶ 2). The Paper Insert was incorporated in, and sold as part of, approximately 862 picture frames, which retailed for $6.00 and cost Urban $1.48 to produce. (Defs' Statement ¶¶ 12–13). Urban's gross profit on the 862 plastic frames was $3,896.00. (Defs' Statement ¶ 14).

Urban used the Photograph without authorization by Baker or by Ipso Facto Publishers ("Ipso"), the publisher of "66/99." (Pl's Statement ¶¶ 23–24). Additionally, when preparing the Photograph for use as the Paper Insert in its picture frames, Urban cropped the image, flipped the orientation of the image from right-left to left-right, changed the image from full color to blue and yellow only and incorporated its "Urban Outfitters" mark into the upper right-hand corner of the Photograph. (Pl's Statement ¶¶ 25–28, 47–50).

### 2. The Licensing of Baker's Work

On March 28, 1999, Ipso and Baker entered into a contract wherein Ipso would pay Baker an advance payment of £1,000. (Defendants' Response to Plaintiff's Motion for Summary Judgment of Copyright Infringement, hereafter "Defs' SJ Resp.," at Exh. A). In exchange, Baker granted Ipso the "sole and exclusive right" to publish "66/99." (*Id.*). In addition, paragraph 2 of the agreement between Ipso and Baker provides that "The publisher shall further pay the photographer fifty per cent (50%) of the gross amount of the proceeds from the sale of subsidiary rights." (*Id.*). Upon returning from his trip, the photographs from the trip were compiled and published in "66/99."

As part of a feature story on Route 66, Baker licensed thirteen photographs from his trip to a British publication called The Independent Magazine. (Defs' Statement ¶ 4). In conjunction with the use of those photographs, Baker was paid £750, or approximately $1,145. (Defs' Statement ¶ 5). Baker also licensed photographs from his Route 66 trip and/or "66/99" to another British publication called i-D Magazine. (Defs' Statement ¶ 6). The photographs were used in two issues of i-D Magazine, first in September 1999 and then in January/February 2000, and Baker was paid i-D Magazine's standard page rate of £50 per page. (Defs' Statement ¶¶ 7–8).

### 3. The Instant Action

Urban was informed of its infringing conduct when Baker, by his agent Kathy Eng, informed Urban's General Counsel and Secretary, Glenn A. Bodzy, that Urban had infringed Baker's copyright. (Pl's Statement ¶ 74). Urban then entered negotiations with multiple representatives of Baker for use of the Photograph; when it became clear that the matter could not be amicably resolved, in March 2001, Urban took action to remove the picture frames

from its shelves and to replace the Paper Insert with a different insert. (Pl's Statement ¶ 74; Defs' Statement ¶ 15). On March 9, 2001, Baker registered the Photograph (as part of a photo essay collection) with the United States Copyright Office. (Appendices to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56, hereafter "Defs' App.," at Exh. D).

On June 15, 2001, Baker filed an original complaint, alleging copyright infringement, tortious misappropriation of goodwill and infringement under the Digital Millennium Copyright Act. See Compl. ¶¶ 19–43.[1] On January 9, 2002, Urban made an Offer of Judgment to Baker, pursuant to Rule 68, in the amount of $9,096.00. On August 6, 2002, after the close of discovery, Baker filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. On August 23, 2002, Urban filed a motion pursuant to Rule 56 of the Federal Rules for summary judgment with respect to Baker's claim for copyright infringement damages and tortious misappropriation.[2] On August 26, 2002, Baker filed a motion pursuant to Rule 56 for summary judgment on the issue of copyright infringement. Lastly, on October 10, 2002, Urban filed a motion in limine for an order excluding the expert report and testimony of Baker's damage expert, Kathy Eng.

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. Proc. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law determines the facts which are material to the outcome of a particular litigation. Anderson, 477 U.S. at 250, 106 S.Ct. 2505; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

---

**1.** By Stipulations and Orders filed October 15, 2001 and February 11, 2002, plaintiff's claims for copyright infringement statutory damages under 17 U.S.C. § 504 and attorney's fees under 17 U.S.C. § 505 were dismissed. (Docket entry nos. 9, 11). By Stipulation and Order filed June 10, 2002, plaintiff's claim under the Digital Millennium Copyright Act was dismissed. (Docket entry no. 16).

**2.** By Stipulation and Order filed September 30, 2002, plaintiff's claim for tortious misappropriation of goodwill was dismissed. (Docket entry no. 33). Therefore, that portion of plaintiff's motion is moot and need not be decided here.

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

## II. Baker's Summary Judgment Motion

▮▮▮ To establish a claim for copyright infringement, a plaintiff bears the burden of proving both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

Here, Urban has conceded the copying issue. Thus, the only remaining issue is whether Baker has proven ownership of the copyright. Baker, in his moving papers, states merely that

> Baker's work was copyrighted when created in 1999 in the United States under U.S. copyright law (17 U.S.C. § 101). Therefore, having proven the first element, in order to prevail in this motion for summary judgment, plaintiff will have to show only that defendants copied the protected work without permission.

Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment of Copyright Infringement ("Pl's SJ Br.") at 3.

Although it is true that the Photograph was copyrighted upon its creation, it is equally true that the ownership rights in

that copyright "may be transferred in whole or in part by any means of conveyance or by operation of law..." 17 U.S.C. § 201(d)(1). Urban, in responding to Baker's motion for summary judgment, asserts that a material issue of fact exists as to whether Baker transferred his rights in the Photograph to Ipso as part of the agreement that granted Ipso the rights to "66/99." *See* Defs' SJ Resp. at 5. According to Urban, the transfer by Baker to Ipso of the "sole and exclusive right" to publish "66/99," *see* Defs' SJ Resp. Ex. A, could reasonably be construed to include the rights to the photographs contained therein. *See* Defs' SJ Resp. at 8; *see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir.1991) (contract could reasonably be read to transfer rights to the book as well as the illustrations therein). Similarly, Urban contends that the transfer by Baker to Ipso of "subsidiary rights," *see id.*, which include, *inter alia*, commercial rights to the work, further creates a genuine issue of material fact as to whether the agreement contemplated transfer of rights to the individual photographs.

Baker's agreement with Ipso regarding "66/99" is ambiguous. It may not have transferred any rights to the Photograph; then again, maybe it did. Neither interpretation of the agreement is unreasonable, and a jury could reasonably adopt either interpretation based upon the facts presented. As the Court of Appeals stated in *Werbungs*, "because the contract is susceptible to more than one reasonable interpretation, the district court properly submitted the issue of contract interpretation to the jury." 930 F.2d at 1026.

By presenting specific evidence that creates a genuine issue of fact as to whether Baker has satisfied the first element of a claim for copyright infringement, ownership of a valid copyright, Urban has car-

ried its burden under Rule 56(e). Summary judgment, then, is not proper on the issue of copyright infringement. Accordingly, Baker's motion for summary judgment is denied.

### III. Urban's Motion In Limine

Urban has brought a motion in limine to exclude the expert testimony and report of Kathy Eng.

#### 1. Background

Kathy Eng ("Eng") worked in New York and was affiliated with ESP, a U.K.-based agency. Baker often worked with an agent in ESP's New York office; when he did, Eng served as his New York agent. Her primary responsibilities were soliciting commissioned work and negotiating acceptable fees for that work on Baker's behalf. *See* Deposition of Kathy Eng (hereafter, "Eng Dep.") at 69. In exchange for her services, ESP received 25% of Baker's total fee for a given shoot. *See id.* at 102.

According to Eng's deposition testimony and attached resume, she attended, but did not graduate from, Parsons School of Design in New York from 1987 through 1992. *See id.* at 10–11. From 1993 to 1995, she worked as a design assistant to Victor Alfaro, a fashion designer. *See* Defendants' Memorandum in Support of Motion in Limine to Exclude Expert Testimony and Expert Report of Plaintiff's Damage Expert, Kathy Eng (hereafter, "Defs' Motion in Limine") at Ex. 5; Eng Dep. at 9–11. Then, until February 1996, Eng worked as an associate editor at a fashion magazine called Fashion America where she researched fabric trends for the women's sportswear market. *See* Defs' Motion in Limine Ex. 5; Eng Dep. 11–12. Eng then did free-lance work coordinating fashion shows for Kevin Krier and Associates. *See* Eng Dep. at 12–13. From 1996 until 1999, Eng worked at The Valentine Group, a design ad agency, where she was the assistant to the creative director and the creative coordinator. *See id.* at 13. In April 1999, Eng left The Valentine Group and opened the two-person New York office of ESP, where she is currently employed. *See* Defs' Motion in Limine Ex. 5; Eng Dep. at 68.

In conjunction with this litigation, Eng prepared an expert report setting forth a calculation of the damages Baker suffered as a result of Urban's breach. *See* Defs' Motion in Limine Ex. 9. Eng concludes, in her expert report, that Baker is entitled to a fee of $260,000 as an estimate of his actual damages for the infringement. *See id.*

#### 2. Analysis

■ Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), district courts retain their role "as the gatekeeper for expert testimony." *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997). Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert. If this threshold requirement is met, then a court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant

and reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also F.D.I.C. v. Suna Assocs., Inc.,* 80 F.3d 681, 686 ("It is well-established that 'expert testimony must be based upon reliable theories or principles.'" (quoting Glen Weissenberger, Federal Evidence 346 (2d ed.1995))).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *See, e.g., Cayuga Indian Nation v. Pataki,* 83 F.Supp.2d 318, 322 (N.D.N.Y.2000). Though the weight given to expert testimony should be left to the finder of fact, expert testimony should be excluded altogether if it is "speculative" or "conjectural" or if it is based on assumptions "so unrealistic and contradictory as to suggest bad faith." *See Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir.1996). Moreover, the Supreme Court has emphasized, in addressing the distinction between methodology and conclusions, that

> nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

First, Eng does not qualify by virtue of "knowledge, skill, experience, training or education" in the area in which her testimony and expert report are offered. As noted below, the damages issue at hand is the value of Urban's unauthorized use of the Photograph, a work that was indisputably in existence prior to Urban's use. *See* section IV, *infra.* As such, the record

is clear that it is referred to as a "stock" photograph. *See* ASMP, Professional Business Practices in Photography (6th ed.2001) at 49 ("Simply stated, stock photography is existing photography....").[3] Eng's primary experience in photography has been in commissioned photographic work where a client hires a photographer to create a new work. The record is also clear that the factors applicable to pricing licenses of stock photographs are different from the factors applicable to pricing commissioned works. Eng testified that the photographer's day rate, the largest cost involved in a commissioned work, is based upon "what [the photographer's] past day rates have been, as well as how much editorial [work he or she has been] doing." Eng Dep. at 34. Eng also testified that the day rate is affected by the current going rates in the industry and the photographer's reputation. *See* Eng Dep. at 34, 61.

The pricing of a stock photograph does not involve these same variables. The reproduction fee paid to the photographer for the use of a stock photograph is not based on a daily rate, and the ultimate license fee is not influenced by the same factors that influence a day rate. *See* Jim Pickerell & Cheryl Pickerell DiFrank, Negotiating Stock Prices (5th ed.2001) at 200 ("[t]he client is not hiring someone to go out and produce something that is only a dream in his or her mind, as is the case in assignment photography. With a stock image, the client knows, before negotiations begin, exactly what he or she is buying .... Whether the image was taken by an experienced professional or an amateur has no bearing on its value.").

Rather, the pricing of stock photography is based upon the type of use, size of use

---

**3.** Although plaintiff argues that the Photograph is not a stock photograph because he was not willing to license the image as a stock photograph, the argument is mere *ipse dixit* and not sufficient to counter defendants' well-supported motion.

and circulation. *See id.* at 210. The differences in pricing concepts for commissioned versus stock photographs simply represent the obvious differences in what is being purchased when one commissions a work versus what is being purchased when one licenses a stock photograph. This difference is explained as follows:

> Assignment photography is new photography, commissioned and paid for by a client. We photographers are selling our ability to create a photograph and also the rights for the client to reproduce that photograph for a very specific usage and time period. In stock photography we are selling (licensing) rights to reproduce an already existing photograph.

Michael Heron & David MacTavish, Pricing Photography (rev. ed.1997) at 7. In view of these crucial differences in both purpose and practice, Eng's experience with pricing specially commissioned photographic shoots fails to qualify her as an expert on the matter of valuing a stock photograph.

While Eng has experience in commissioned works, her experience in licensing is virtually non-existent. During her entire three-year career as a photographic agent, she has licensed one photograph to another party, and, even then, she was unable to recall many of the details of the transaction, including the image that was licensed. *See* Eng Dep. at 108–110. Eng also testified that she purchased stock photography on three occasions as to which she had very limited recollection but that she was not involved in the pricing. *See* Eng Dep. at 118–19. On this record, I find that Eng does not have sufficient "knowledge, skill, experience, training or education" in the licensing of stock photography to qualify as an expert in that area. Accordingly, Urban's motion to exclude the proffered expert testimony and report on that ground is granted.

■ Second, even assuming, *arguendo,* that Eng were qualified as an expert in pricing licenses for already-existing photographs, Eng's proposed expert testimony is inadmissible because it is neither relevant nor reliable. Eng's expert report and proposed expert testimony focus on pricing methods associated with commissioned photography. For example, she determines the "base fee" for the license based on Baker's daily fee for a commissioned shoot for advertising assignments. *See* Defs' Motion in Limine Ex. 9 at 2–3. As noted below, the issue here is not the valuation of Baker's service were he commissioned by Urban to produce the Paper Insert from scratch but rather what a reasonable license fee would have been for Urban's use of the already-existing photograph had Baker licensed the Photograph to Urban. *See* section IV, *infra.* By presenting an expert report where the starting point for calculating damages is Baker's fee for commissioned work, Eng is engaging in the sort of "apples and oranges" comparison that has been rejected in the past as irrelevant, *see, e.g., Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 208 (2d Cir.1984) (upholding district court's exclusion of expert testimony as derived from irrelevant bases); *see also Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.,* 103 F.Supp.2d 268, 281 (S.D.N.Y.2000) (excluding expert testimony and noting that the proposed expert's inclusion of unfounded and irrelevant calculations "alone destroys the validity of his conclusions"), and in which the witness has not applied principles and methods reliably to the facts of this case, *see* Fed.R.Evid. 702.

Third, even were Eng's proposed testimony relevant (which it is not), it is grossly unreliable. Eng began her computation of Baker's damages by starting with a $10,000 "base fee," which she states is "typical or low for Mr. Baker." Defs' Mo-

tion in Limine Ex. 9 at 2. During her sworn deposition, however, Eng admitted that those statements were not accurate. *See* Eng Dep. at 230–31 ("Q: So you would say that's not an accurate statement?" "A: I have to say it's not an accurate statement. No.").

Eng then doubled the base fee to arrive at a suggested fee of $20,000. When asked why she doubled the base amount, Eng claimed it was "based on the usage." *Id.* at 242.[4] This claim is belied by Eng's reference to the fee as the "Pre–Usage Base License Fee" in her expert report. *See* Defs' Motion in Limine Ex. 9 at Schedule A. In any event, the 100% increase in the base fee is entirely unfounded and therefore unreliable.

Eng then added on the cost of the unauthorized usage, which she calculates at $200,000. To arrive at that amount, she uses the "industry practice" of charging "a fee of ten (10) times the normal reproduction charge for unauthorized usage." Defs' Motion in Limine Ex. 9 at 3. Eng, however, does not appear even to acknowledge that, unlike in the passage from *Negotiating Stock Photo Prices* (*see* Defs' Motion in Limine Ex. 10 at 194) from which she derives her "ten times" multiplier, her base fee calculus focuses on the cost of commissioning an entirely new photograph, not the normal reproduction cost of an already-existing photograph. Nonetheless, Eng applies the "ten times" multiplier. This type of calculation, ignoring, as it does, recognized industry practice, "alone destroys the validity" of Eng's conclusions. *See Johnson Elec.*, 103 F.Supp.2d at 281.

Among other additions and multipliers to the base fee, Eng also added a $10,000 "Model fee" for which she provided no explanation other than her *ipse dixit* that

Baker is "contractually required to compensate the model," an assertion that finds no support whatsoever in the record. Defs' Motion in Limine Ex. 9 at 4. Eng also included a calculation of $40,000, purportedly based upon "industry practice" (though wholly unsupported by any citations), for the colorization and addition of the Urban logo to the Photograph. *See* Defs' Motion in Limine Ex. 9 at 4. These add-ons, which are rife with unfounded speculations and "based on assumptions so unrealistic and contradictory as to suggest bad faith," *see Boucher,* 73 F.3d at 21, are further indications that Eng's proposed expert report and testimony are not reliable and must be excluded.

In ·sum, Eng does not possess the "knowledge, skill, experience, training or education" to opine on the value of a license to Urban to use the Photograph. Even if she did, the base fee number is founded on an incorrect premise, *viz.,* a commissioned photograph rather than a license to use an already existing photograph, the multipliers applied in her report are speculative, and the final damage calculation is speculative and without basis. Accordingly, Urban's motion in limine to exclude Eng's expert report and expert testimony is granted.

## IV. Urban's Motion for Partial Summary Judgment

Under § 504 of the Copyright Act, a plaintiff may recover actual damages or statutory damages. Baker has stipulated to the withdrawal of his claim for statutory damages. As to actual damages, § 504(b) of the Copyright Act provides, in pertinent part,

> (b) Actual Damages and Profits.—The copyright owner is entitled to recover

---

**4.** Eng also offers no reasoned explanation for why she would double the base rate for Baker here, when she had licensed a previously-commissioned work by another photographer, whose daily rate was $15,000, for $1,000. *See* Eng Dep. at 242–44.

the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages . . . .

17 U.S.C. § 504(b).

■ In calculating actual damages, "the primary measure of recovery is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1118 (2d Cir.1986). Typically, a plaintiff establishes impairment of market value by demonstrating that he lost sales or other profits that he would have obtained from the sale or license of the infringed work "but for" the defendant's infringement. *See, e.g., Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir.1981); *Banff Ltd. v. Express, Inc.*, 921 F.Supp. 1065, 1068 (S.D.N.Y.1995). Such damages "are awarded to compensate the copyright owner for losses from the infringement." *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir.1985). The award of actual damages may not, however, be based upon "undue speculation." *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir.2001); *see also Abeshouse*, 754 F.2d at 470.

In moving for partial summary judgment on damages, Urban argues that Baker has not properly alleged damages resulting from Urban's use of the Photograph in that he has not alleged a lost sale, license or other business opportunity. Because Baker can prove no actual damages suffered by him, Urban argues that the only other damages recoverable by him are Urban's profits on sales of the Photograph. The record is uncontroverted that the maximum profit that inured to Urban as a result of the use of the Photograph was $3,896.00, which represents Urban's maximum total gross profits on the 862 picture frames in which the Paper Insert appeared. *See* Defs' Statement ¶ 14. Thus, Urban contends that this amount represents the highest award that Baker could recover assuming, for the purposes of this motion only, that Baker is entitled to recovery. *See* Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56 (hereafter "Def's SJ Br.") at 7–20.

In response, Baker asserts that his damages calculation may include a moral debt owed to the subject of the picture, one Howells, that he is entitled to damages based on his moral rights, and that he is entitled to a retroactive licensing fee. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment Pursuant to Fed. R.Civ.P. Rule 56 (hereafter "Pl's SJ Opp.") at 5–14.

■ The first of these arguments is, at best, unsupported by either judicial or statutory authority or, at worst, frivolous. These moral obligation claims nowhere appeared in Baker's complaint. There, Baker alleged that a contract between himself and Howells required payment and that Howells had demanded such payment, *see* Compl. ¶ 33, but no evidence of any such contract has been proffered by Baker. On the issue any moral obligations from Baker to Howells, Baker has introduced no evidence whatsoever of a legally cognizable debt Howells. Indeed, Baker's argument, without benefit of citation, consists of the following: "Whether or not the obligation between Baker and Howells is legal and binding has absolutely nothing to do with their personal or business relationships. Simply stated, Mr. Baker feels morally responsible for compensating the model for any usage based on the image at issue." Pl's SJ Opp. at 13–14. Any award

to Baker based upon Baker's personal feelings of moral debt to Howells is without basis. *See, e.g., Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 470 (2d Cir.1985) (award under Copyright Act cannot be "based upon undue speculation"); *Mackie v. Rieser,* 296 F.3d 909, 917 (9th Cir.2002) ("hurt feelings" cannot form the basis of a calculating damages).

 Baker's argument based on his own recently-conceived moral rights claim is no more well-rooted.[5] As Baker himself concedes under the subtitle "Plaintiff's Moral Rights Claim—a Matter of First Impression," "It is not clear whether the Plaintiff has a right in this country to enforce his moral Rights." Pl's SJ Opp. at 8. Baker asserts that he "is a subject of the United Kingdom. Baker prepared the book in France. The book was published in France and printed in Germany," and then, less than helpfully, volunteers that "[p]robably the law of one of those countries applies to Baker's copyright in his book...." Pl's SJ Opp. at 10. Passing for a moment that these types of allegations are not the sort of "specific facts" cognizable on summary judgment, *see, e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) ("unsupported allegations do not create a material issue of fact"), "the law in this Circuit does not recognize an author's common law 'moral rights' to sue for an alleged distortion of his written work...," *Choe v. Fordham Univ. Sch. of Law,* 920 F.Supp. 44, 49 (S.D.N.Y.1995).

However, Baker's argument as to the appropriateness of using a reasonable, retroactive "license fee" in calculating actual damages is less clear-cut. While hypothetical damages are disfavored, a reasonable, retroactive license fee has been permitted in certain instances. Recently, in *On Davis,* the Court of Appeals discussed using a reasonable license fee as a basis for

calculating a plaintiff's damages. 246 F.3d at 164–69. There, The Gap, a major clothing retailer, used without permission a photograph of an individual wearing plaintiff Davis' eyewear in a widely-displayed advertisement. In considering whether a reasonable license fee may be included as part of a plaintiff's actual damages, the Court noted that, in certain cases, "unless such a foregone payment can be considered 'actual damages,' in some circumstances victims of infringement will go uncompensated." *Id.* at 166. While the Court acknowledged that "finding the fair market value of a reasonable license fee may involve some uncertainty," it concluded that such uncertainty "is not a sufficient reason to refuse to consider this as an eligible measure of actual damages." *Id.*

 Urban asserts that reasonable license fee damages are inappropriate because Baker cannot establish and has not established that he and Urban would have entered into a license agreement for use of the Photograph. *See* Defs' SJ Br. at 13. Urban analogizes the instant case to *Business Trends Analysts v. Freedonia Group, Inc.,* 887 F.2d 399 (2d Cir.1989), where the Court of Appeals reversed an award of damages based on market advantage or the value of the use of the infringed work in familiarizing customers with the infringer's products because, *inter alia,* the parties as competitors would never have consummated a license for use of the copyrighted material. *See also Encyclopedia Brown Prods., Ltd. v. HBO, Inc.,* 25 F.Supp.2d 395, 401 (S.D.N.Y.1998) (proposing an analysis for determining whether a licensing would have occurred).

Here, unlike in *Business Trends,* the parties are not direct competitors. Although Baker initially stated that he has only worked on assignment and has not

---

**5.** Baker's complaint does not include a moral rights claim on his own behalf.

sold or licensed photography in his career, *see* Defs' SJ Br. at 14, his tardy, reluctant responses to defendants' proper discovery requests have revealed that he has allowed certain photographs from his Route 66 road trip to be reproduced for a fee in other magazines, *see* Defs' Statement ¶¶ 4–8. Thus, the present case is factually similar to the situation in *On Davis,* and accordingly reasonable license fee damages cannot be ruled out as a matter of law. There is sufficient evidence in the record, in the form of Baker's prior licensing of photos from his Route 66 trip, from which an award of a reasonable licensing fee can be made.

However, reasonable license fee damages are not intended to be a windfall for a plaintiff. An indispensible component of a reasonable license fee is, quite obviously, that it be reasonable. In *On Davis,* the Court recognized that "awarding the copyright owner the lost license fee can risk abuse. Once the defendant has infringed, the owner may claim unreasonable amounts as the license fee...." 246 F.3d at 166. The *On Davis* Court then declared the plaintiff's demand of $2.5 million to be precisely the type of unreasonable amount that could result from allowing retroactive license fees. *Id.* Instead of an amount based on undue speculation and wildly inflated numbers, the question in determining damages "is not what the owner would have charged, but rather what is the fair market value." *Id.* "In order to make out his claim that he has suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value." *Id.* Furthermore, as the Court in *On Davis* declared, "the fair market value to be determined is not of the highest use for which plaintiff might license but the use the infringer made." *Id.* at 166 n. 5.

In the instant case, Baker has estimated his actual damages at $260,000. *See* Defs' Motion in Limine at Ex. 9. As Justice Marshall declared in *Marbury v. Madison* (albeit in a different vein), "This is too extravagant to be maintained." 5 U.S. 137, 179, 1 Cranch 137, 2 L.Ed. 60 (1803). As noted above in the discussion of Urban's motion in limine, *supra* at III, this number does not approximate the actual damages that Baker has suffered, particularly in light of the factors that must be taken into consideration, under *On Davis,* in determining a reasonable license fee. Rather, Baker's estimate of $260,000 in actual damages is not only irrelevant and unreliable, as noted in section III, above, but is exactly the kind of abuse the *On Davis* court warned about. 246 F.3d at 166. In short, Baker's "reasonable license fee" is not reasonable.

Therefore, in order to resolve defendants' motion, it is necessary to determine the amount of a reasonable license fee here. As a threshold matter, § 504(b) of the Copyright Act provides for a plaintiff to recover his actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). This provision prevents a plaintiff from obtaining a "double recovery," *viz.,* recovery for both his actual damages and the defendant's profits to the extent those two measures of damages overlap. *See Hamil Am., Inc. v. GFI, Inc.,* 193 F.3d 92, 108 n. 7 (2d Cir. 1999). In the context of a damage award predicated on a reasonable license fee, the amount a plaintiff receives as a license fee for allowing a defendant to make the infringing sales necessarily overlaps with the profits the defendant receives from those same infringing sales. *See, e.g., Playboy Enters., Inc. v. Dumas,* 831 F.Supp. 295, 320 (S.D.N.Y.1993) (noting that the copyright owner properly conceded that "any

license or royalty fee would be deducted from the profits to prevent double recovery"). Thus, to the extent a plaintiff receives a license fee covering the infringing sales, the plaintiff cannot also recover the full amount of the defendant's profits from those same infringing sales.

The practical effect of the prohibition against double recovery, then, is that an award of the defendant's profits must be reduced by the amount of any such overlap. This is accomplished by subtracting overlapping actual damages from the amount of the defendant's profits. *See Hamil*, 193 F.3d at 108 n. 7 ("[I]f [plaintiff] were in fact entitled to recover lost profits, it would have had to set off its recovery for [defendant's] profits by those profits already taken into account to determine [plaintiff's] lost profits because [plaintiff] could not recover twice.").

Here, the record contains evidence regarding three instances of past licensing, all of which relate to photographs taken during Baker's Route 66 trip. Those instances of past licensing can serve as a benchmark for measuring the fair market value of a reasonable license fee for the Photograph. *See On Davis*, 246 F.3d at 161. Two of the instances involve photographs licensed for use in i-D Magazine, for which Baker was paid a page rate of £50 (approximately $76) per page. *See* Defs' Statement ¶¶ 6–8. With anywhere from one to five photographs per page, Baker received between $15 to $76 for the use of each photograph. The third instance was a feature story in The Independent Magazine about Route 66 that included thirteen photographs and for which Baker received a fee of £750 (approximately $1,145). *See* Defs' Statement ¶¶ 4–5. Dividing that sum by thirteen, the cost per image is approximately $88.

Thus, the admissible evidence in the record demonstrates that the highest license fee that Baker has ever received for the licensing of a photograph is $88. Even assuming, *arguendo*, that this fee were to be multiplied by a factor of ten, which Baker suggests is the proper multiplier to account for the infringing use, Baker's actual damages would not exceed $880. Because this amount does not exceed the already-established amount of Urban's profits, Baker's maximum recovery is $3,896. *See Playboy*, 831 F.Supp. at 320 ("Because the award of profits exceeds [the copyright owner's] largest request for a license fee, the court does not need to further address what would constitute an adequate license fee for [the copyright owner]."). Therefore, Urban's motion for partial summary judgment on damages in the maximum amount of $3,896 is granted.

## V. Baker's Rule 11 Motion

Baker has also moved for sanctions, pursuant to Rule 11, against Urban and its counsel. The moving papers recall to mind plaintiff's counsel's motion in *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, where the Court of Appeals found that counsel had failed to present a coherent legal theory and that the papers filed were "at best an invitation to the court to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for [plaintiff-] appellant." 164 F.3d 110, 112 (2d Cir.1999). Nevertheless, plaintiff's arguments will be addressed to the extent they can be discerned.

 Federal Rule of Civil Procedure 11 provides for sanctions if an attorney presents a pleading, written motion or other paper to the Court that "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."

*Kropelnicki v. Siegel,* 290 F.3d 118, 131 (2d Cir.2002) (quoting *W.K. Webster & Co. v. American President Lines, Ltd.,* 32 F.3d 665, 670 (2d Cir.1994)). The "improper purpose" clause requires that a party not submit a pleading, motion or other document for the purpose of delay, harassment or increasing the costs of litigation. *See, e.g., McLoughlin v. Altman,* 92 Civ. 8106, 1995 WL 505591 (S.D.N.Y. Aug. 21, 1995). With respect to the requirement that an attorney signing a pleading, motion or other paper have a reasonable belief that arguments are well grounded in fact or warranted by law, sanctions are not appropriate unless "a claim has absolutely no chance of success under the existing precedents." *See, e.g., Simpson v. Putnam County Nat'l Bank,* 112 F.Supp.2d 284, 289 (S.D.N.Y.2000) (citations omitted); *see also O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996) ("sanctions may not be imposed unless a particular allegation is utterly lacking in support.").

As Judge Knapp has stated, "The purpose of Rule 11 is to discourage attorneys from bringing frivolous court actions. In order to deter noncompliance with Rule 11, a court may impose monetary sanctions to compensate the opposing party's attorney's fees and additional expenses incurred as a result of the conduct." *MAI Photo News Agency, Inc. v. ABC,* 97 Civ. 8908, 2001 WL 180020, at *7 (S.D.N.Y. Feb. 22, 2001).

In his Rule 11 motion, Baker appears to be seeking sanctions on the grounds that: (1) Urban's overall conduct of the litigation has been vexatious; (2) Urban's taking of the depositions of Darwin and Stevens, two of Baker's London-based agents, and Urban's responses to Baker's requests for admission were unjustified; and (3) Urban's affirmative defenses were frivolous and filed for an improper purpose. *See* Plaintiff's Memorandum in Reply to De-

fendants' Response to Plaintiff's Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereafter, "Pl's Rule 11 Reply") at 5–9. These grounds are baseless.

To begin, although Baker's moving papers did not rely on 18 U.S.C. § 1927, much of his argument was that Urban's litigation tactics were vexatious. In his reply, Baker seems to acknowledge that his motion papers did not invoke § 1927 but reminds the Court of its power to impose sanctions under § 1927 *sua sponte.* Whether Baker relies on § 1927 or on that prong of Rule 11 that sanctions papers interposed for an improper purpose, Urban's conduct has not been vexatious. Urban has attempted, from the early stages of this action, to resolve this dispute without further burdening the parties or the Court. Urban has made several settlement offers and has made an Offer of Judgment to plaintiff in an amount considerably above the amount of any possible profit that Urban made from using the photograph that Baker took. *See* Defendants' Response to Plaintiff's Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereafter, "Defs' Rule 11 Resp.") at Exh. D. Only when settlement did not appear possible did Urban then begin to conduct discovery. The discovery sought by Urban consisted of information relevant to ascertaining the proper owner of the copyright rights in the Photograph, determining the basis for Baker's damage claims on behalf of Howells, the subject of the Photograph, and identifying the basis for, and proper amount of, any other actual damages that Baker might claim. *See* Defs' Rule 11 Resp. at 7. Furthermore, Urban and its counsel conducted themselves reasonably and professionally throughout the process, even in the face of delays, obstruction and

incomplete production on the part of Baker, particularly as to prior licensing fees.

Similarly, the taking of the Darwin and Stevens depositions was reasonable because these two individuals were identified by Baker himself as people who would have knowledge of his past licensing activities and as people who had been authorized to act on Baker's behalf in the past. *See* Defs' Rule 11 Resp. at Ex. F. In any event, Rule 11 does not apply to discovery. *See* Fed.R.Civ.P. 11(d). Finally, with regard to Urban's affirmative defenses, I do not find them to be either frivolous or improper. Rather, as indicated by the denial of Baker's motion for summary judgment, they were objectively reasonable assertions of bona fide defenses to Baker's claims.

■ The primary motivation, it seems, for Baker's Rule 11 motion appears to be that Urban has not rolled over and played dead, withdrawing all opposition to Baker's complaint. Urban, however, is fully entitled to question Baker's claims, particularly in light of the possibility that Baker may not be the owner of the copyright rights. As noted in section II, *supra,* Baker is not even entitled to summary judgment on the claims that he faults Urban for opposing. Urban should not be forced to expend the additional time and resources to oppose a Rule 11 motion in this action. Because Urban's conduct in this litigation has never approached the level contemplated by Rule 11, Baker's motion for sanctions pursuant to Rule 11 is denied. Moreover, given the complete lack of merit of Baker's Rule 11 motion—which Baker and his counsel were warned about prior to making the motion—it is appropriate that defendants, the prevailing parties on plaintiff's Rule 11 motion, be compensated for their reasonable expenses and attorneys' fees incurred in opposing the motion. *See* Fed.R.Civ.P. 11(c)(1)(A).

## CONCLUSION

Plaintiff's motions for summary judgment (Docket entry no. 19) and for sanctions (Docket entry no. 25) are denied. Defendants' motion for partial summary judgment (Docket entry no. 21) and motion in limine to exclude the expert testimony and expert report of Kathy Eng (Docket entry no. 36) are granted.

Counsel for both parties shall inform the Court by letter no later than April 7, 2003 of the steps necessary to resolve this action.

SO ORDERED: