Michiko STEHRENBERGER, Plaintiff,

v.

R.J. REYNOLDS TOBACCO HOLDINGS, INC.; R.J. Reynolds Tobacco Company; Kim Clemmons, individually and d/b/a Genius Insanity, Inc., and Genius Insanity Entertainment; Draft Worldwide, Inc. associated with/or d/b/a Draft Inc., and Kevin Berg & Associates, Inc. d/b/a KBA Marketing, Defendants.

No. 03 Civ. 4894(LLS).

United States District Court, S.D. New York.

Sept. 14, 2004.

Stephen A. Weingrad, William D. Gardner, Weingrad & Weingrad, LLP, New York City, for plaintiff.

Marc J. Rachman, David S. Greenberg, Davis & Gilbert, LLP, New York City, for defendants.

## OPINION and ORDER

STANTON, District Judge.

In this copyright infringement suit, the issue presented by defendants' motion for partial summary judgment is whether plaintiff can claim, as part of her "actual damages," a multiplier or "fee for unauthorized usage" which would increase by up to ten times the amount which would otherwise represent a fair and reasonable license fee for the infringed material.

Plaintiff's damages expert bases his calculation of her reasonable license fee for the infringing newspaper advertisements on a fee of $10,000 for a corporate advertisement in newspapers, and a fee of $50,000 for a limited corporate identity project for a client with annual revenues in the range of those of defendant Reynolds. Plaintiff's damages expert thus concludes, "A total licensing fee of $60,000 is thus appropriate in this case."

He then makes an addition for the fact that the infringing use was unauthorized:

> There must be one final addition for unauthorized use. The graphic arts community recognizes that mistakes do occur resulting in unauthorized use. To resolve these problems, the industry has a schedule of fees for the granting of what is called a "retroactive license." A user who discovers that it has made an unauthorized use can resolve the problem by paying a reasonable license fee of two to three times the normal fee, Exhibit 11, thus avoiding the costly and protracted business of a federal copyright case. The multiplier applies when the infringer recognizes the mistake and moves quickly to correct it. However, where a copyright owner must go to court to resolve the infringement, the fee guideline is that the price should be further enhanced up to ten times what the pre-infringement price would have been.

Since he perceives that the usage in this case was "clearly without consent and was clearly willful," requiring this law suit to enforce plaintiff's rights, he concludes that a multiplier of ten is appropriate and thus that plaintiff's loss "based on industry standards and practice" is $600,000. See April 26, 2004 Expert Report of Henri Dauman.

Whatever its utility as a marketplace technique for resolving problems among the "graphic arts community," this claimed practice is not the method by which damages are calculated under the copyright law. In litigated cases, infringement does not make a copyright more valuable.[1]

The accepted method for calculation of damages in an infringement case has been recently summarized by Magistrate Judge Fox of this court in *Barrera and Burgos v. Brooklyn Music, Ltd., et al.*, 2004 U.S. Dist. LEXIS 12450 at *8–9 (S.D.N.Y. June 30, 2004)

> The Copyright Act states, in pertinent part: "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by [§ 504(b) ];

---

1. When multipliers are used, it is not to ascertain a reasonable license fee, but as an enhancement of statutory damages, or in the special case of unauthorized retransmission of copyrighted broadcasts. *See* 17 U.S.C. §§ 504(c), (d); *Broadcast Music, Inc. v. De-* *Gallo, Inc.*, 872 F.Supp. 167 (D.N.J.1995); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F.Supp. 772, 774 (D.Conn.1988); *Broadcast Music, Inc. v. Barflies, Inc.*, No. Civ. A. 03–304, 2003 WL 21674470 at *2 (E.D.La: July 16, 2003).

or (2) statutory damages, as provided by subsection [17 U.S.C. § 504(c)]." 17 U.S.C. § 504(a) (" § 504(a)"). Actual damages are primarily measured by "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." See *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,* 807 F.2d 1110, 1118 (2d Cir. 1986). In appropriate circumstances, actual damages may be taken to be a reasonable license fee—that is, the fair market value of a license authorizing defendants' use of the copyrighted work. See *On Davis v. The Gap, Inc.,* 246 F.3d 152, 164–68 (2d Cir.2001).

In the present case plaintiff's expert calculated, as an "appropriate" total licensing fee, the sum of $60,000. Both facially and substantively, his increase of that figure by a factor of ten does not define a fair and reasonable license fee, but represents concepts of punishment for infringement, deterrence of similar behavior in the future, and recompense for the costs and effort of litigation. Those components form no part of "actual damages" under the statute. The copyright law punishes and deters in other ways: by statutory (enhanced) damages for willful infringements, disgorgement of profits, and imposition of costs and attorneys fees—but it has no provision for "multipliers" in the calculation of actual damages.

As stated in *Barrera and Burgos, supra,* at *15, a claimed—additional $45,000, which allegedly reflects the fact that defendants' use of the Photograph was unauthorized, cannot logically represent part of the fair market value of a license *authorizing* such use. . . . The portion of Elsner's declaration quoted above suggests that a photographer or stock photography agency might demand such an additional fee in order to avoid the need to resort to litigation to resolve an infringement dispute. However, the injuries compensable through actual damages, as contemplated by §§ 504(a) & (b), do not encompass the need to engage in litigation.

Such a multiplier has been used to compute actual damages from unauthorized use in only one case, *Bruce v. Weekly World News.Inc.,* 150 F.Supp.2d 313, 321 (D.Mass.2001), *vacated in part,* 310 F.3d 25 (1st Cir.2002). The *Bruce* court did not analyze the issue, because both sides' experts adopted the multiplier concept, and I decline to follow it, for the reasons given above. In *Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 359 (S.D.N.Y.2003) Judge Preska mentioned, *arguendo,* the use of a multiplier, but went no further because the higher measure of damages was defendant's profits. A similar glancing reference is made in *Fournier v. McCann Erickson,* 242 F.Supp.2d 318 at 340 (S.D.N.Y.2003), but in neither of those cases [2] was the court asked squarely to determine the availability of such a multiplier.

In the end, the purpose of ascertaining a reasonable license fee is to determine the fair market value of the right the infringer violated. As stated in *On Davis v. The Gap. Inc.,* 246 F.3d 152, 172 (2d Cir.2001):

> The hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner. The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license. The honest purchaser is

---

**2.** In a later ruling the *Fournier* court left open the possibility that lay testimony about the market practice might be received (it "has not been precluded") but declined to follow *Bruce. Fournier v. Erickson,* 253 F.Supp.2d 664, 665 (S.D.N.Y.2003).

hypothesized solely as a tool for determining the fair market value of what was illegally taken.

The "value of what was illegally taken" is not determined by multiplying it. Plaintiff's expert calculated that value at $60,000 and (if that figure is proved) that amount, and not a multiplication of it, represents plaintiff's "actual damages."[3]

*Conclusion*

Plaintiff is precluded from offering evidence supporting her claim that a multiplier should be used in calculating her actual damages.

So ordered.

**3.** The precise nature of plaintiff's claim to statutory or common-law punitive damages has been shifting, with the result that briefing on the point has been at cross-purposes. Under the circumstances, the portion of defendants' motion which seeks to bar such damages is denied without prejudice to renewal when plaintiff's claim is clarified.