STEVENS LINEN ASSOCIATES, INC.,
Plaintiff-Appellant,

v.

MASTERCRAFT CORPORATION,
Defendant-Appellee.

No. 1320 Docket 81-7038.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1981.

Decided July 22, 1981.

---

James K. Silberman, New York City (Blum, Kaplan, Friedman, Silberman & Beran, New York City, Michael I. Wolfson, New York City, of counsel), for plaintiff-appellant.

Joseph D. Garon, New York City (Brumbaugh, Graves, Donohue & Raymond, New York, George W. Whitney, Russell H. Falconer, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff Stevens Linen Co. appeals from that part of an order entered in the Southern District of New York, Motley, J., denying plaintiff compensatory damages result-

ing from the copyright infringement of plaintiff's upholstery fabric entitled "Chestertown." The district court held that defendant's fabrics "Rio Grande" and "Grand Canyon" infringed plaintiff's copyright for its Chestertown fabric, granted a permanent injunction barring future sales of the infringing fabrics, and awarded plaintiff reasonable attorney's fees. The district court denied an award of compensatory damages, however, because it believed any damages suffered by plaintiff to be too speculative to be determined. We now modify the order and remand it for computation of damages.

## I.

Stevens Linen Co. and defendant Mastercraft Corp. are direct competitors in the manufacture and marketing of woven upholstery fabrics. In the summer of 1976, a Stevens Linen employee created a new fabric design, known as Chestertown. The fabric was first shown publicly in July of 1976 and first sold in September of that year. A copyright registration was then obtained. Stevens Linen displayed the fabric in North Carolina at a national furniture market called the "High Point Market." After attending that market, a Mastercraft designer created the two infringing fabrics: Rio Grande and Grand Canyon.

Stevens commenced this suit on April 19, 1979, alleging that Mastercraft's two fabrics infringed Steven's copyright for the Chestertown fabric. The district court found the Mastercraft fabrics to be substantially similar in appearance to Steven's copyrighted fabric and therefore entered an order of preliminary injunction, temporarily enjoining the sale of the infringing fabrics, on February 15, 1980. The order was affirmed by this court in an unpublished ruling on April 21, 1980.

A non-jury trial of the merits ensued. At trial, the parties again contested the issue of infringement. In addition, Stevens presented evidence to support several possible theories as to its damages from infringement. First, Mastercraft admitted having sold 253,867 yards of its Rio Grande and Grand Canyon fabrics. Therefore, Stevens claimed that it suffered damages of lost profits on the entire amount of Mastercraft's sales, since it could have sold this amount of Chestertown had there been no infringement. Stevens offered testimony that it had excess production capacity during the time of Mastercraft's sales.

Second, Stevens offered evidence that twenty-two of its Chestertown customers had also purchased Mastercraft's Rio Grande and Grand Canyon fabrics. These twenty-two customers purchased a total of 95,422⅝ yards of Mastercraft's two fabrics. Thus, Stevens argued that it was damaged at the minimum in the amount of lost profits on these sales. Stevens also placed into evidence the 14,234⅛ yards of sales by Mastercraft of its two fabrics to purchasers to whom Stevens had distributed samples of its Chestertown fabrics, and the 97,258 yards of Mastercraft sales to customers who had been solicited to purchase Chestertown.

Third, Stevens offered testimony by its Vice President and Director of Design as to Steven's original projections for Chestertown sales. Based upon the fact that Chestertown had tripled in sales from 1977 to 1978, Stevens had projected that sales would again triple in 1979 (to about 270,000 yards), would increase by about 12% in 1980, would begin tapering off in 1981, and would have a total sales life of about ten years. Stevens also introduced evidence of Chestertown's actual performance: in 1979, the year in which Mastercraft's fabrics were first sold in competition with Chestertown, sales increased only 4%, instead of the tripling projected, and in the first six months of 1980, sales of Chestertown declined by 64%.

Finally, Stevens compared the sales of Chestertown with its overall sales during the times in question. During 1978, before Mastercraft began sales of its two fabrics, Chestertown's sales had increased by 216%, while Stevens's overall sales increased by 37% and its sales not including Chestertown increased 30%. In 1979, when Mastercraft began its sales of Rio Grande and Grand Canyon, and when sales of Chestertown in-

creased only 4%, Stevens's overall sales increased 28%, and sales without including Chestertown increased 30%. In the six months ending July 31, 1980, when Chestertown sales declined 64%, overall sales declined only 16% and sales not including Chestertown declined only 12%.

Stevens also introduced into evidence certain Mastercraft invoices for sales of Rio Grande and Grand Canyon. Twenty-four of the invoices, totalling 4,329⅜ yards with a total sales price of $15,362.91, carried dates subsequent to entry of the preliminary injunction. Stevens argued that it should be awarded that sum in addition to any compensatory damages for losses of sales prior to the granting of the preliminary injunction.

With respect to damages, Mastercraft pointed out that Stevens's Chestertown fabric was priced at $5.40 per yard, while Mastercraft's fabrics sold for approximately $3.50 per yard. Mastercraft's President testified that, because of the difference in price, he did not believe Stevens would have obtained all of Mastercraft's sales in the period in question. He also pointed to the existence of similar, cheaper fabrics on the market. Finally, Mastercraft offered evidence suggesting that the dates on the invoices in question did not reflect dates of shipping, but merely dates of billing.

The district court held that the two Mastercraft fabrics infringed Stevens's copyright for its Chestertown fabric. As for damages, the court noted that the applicable statute, 17 U.S.C. § 504 (1976 & Supp. III 1979), provides for an award of either the copyright owner's damages plus the infringer's profits or, at the election of the copyright owner, specified statutory damages, and that Stevens had elected to pursue actual damages and any of the infringer's profits. The court found that Mastercraft had indeed lost money on its infringing fabrics, and therefore no profits could be awarded. As to actual damages to Stevens, although finding that "it is reasonable to assume that the infringement affected plaintiff's sales," the court refused to award any compensatory damages, finding them too speculative.

The court specifically rejected the theory that Stevens would have sold additional amounts of its Chestertown fabric in the total amounts of the infringing fabrics sold by Mastercraft. It also rejected the theory that Stevens would have sold additional amounts of Chestertown to those of its customers who purchased both Chestertown and Mastercraft's fabrics. Finally, it dismissed the projections testified to by a Stevens employee as even more speculative than the other theories of lost sales. The court made no mention of either the comparison to sales of Stevens's other fabrics or the evidence as to post-injunction sales of Mastercraft's fabrics. The court did award Stevens its attorney's fees.

## II.

We believe the district court erred in failing to award Stevens compensatory damages. In establishing lost sales due to sales of an infringing product, courts must necessarily engage in some degree of speculation. *See, e. g., Gross v. Van Dyk Gravure Co.*, 230 F. 412 (2d Cir. 1916); *Fruit of the Loom, Inc. v. Andris Fabrics, Inc.*, 227 F.Supp. 977 (S.D.N.Y.1963). *Cf. Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931) (antitrust damages); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927) (same). Although, as Mastercraft argues on appeal, there is a distinction between proof of causation—meaning proof that defendant's acts caused any harm to plaintiff at all—and proof of the amount of damage, in this case the district court found that Stevens's copyright had been infringed and that this infringement necessarily caused some loss of sales by Stevens. Therefore the only issue was the extent of that damage.

Given the difference in price between the infringed and infringing products, the district court was correct in refusing to grant to Stevens damages based upon the assumption that it would have sold the entire amount of fabric sold by Master-

craft. *See Alouf v. Expansion Products, Inc.*, 417 F.2d 767 (2d Cir. 1969); *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.*, 329 F.2d 194 (2d Cir. 1964); *L & L White Metal Casting Corp. v. Cornell Metal Speciality Corp.*, 353 F.Supp. 1170 (E.D.N.Y.1972). Moreover, it was also proper for the district court to reject the projections of Chestertown sales offered by Stevens's Vice President and Director of Design. While under other circumstances, such testimony might support an award of damages, here the testimony was completely devoid of documentary support, and the witness furnished the court with no basis for the projections and hence no basis on which the court could evaluate the validity of the projections.

 Nevertheless, the district court should have awarded damages measured either (1) by lost profits which Stevens would have realized from sales to customers who bought both Stevens and Mastercraft fabrics, or (2) by lost profits based upon the difference between sales of Chestertown and the average sales of all of Stevens's other fabrics, whichever sum proves to be larger. As to the first theory, admittedly we cannot be certain that all of the purchases of these twenty-two customers would have been made from Stevens rather than Mastercraft had no infringing products been offered. Nevertheless, we can reasonably believe that these customers of Stevens had a demand for this type of fabric and were shifting their purchasing to the cheaper infringing fabrics and away from Chestertown. *See, e. g., Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F.Supp. 404, 407 (N.D.Ill.1976). Although Stevens might not have made every one of Mastercraft's sales, we believe that once Stevens established that it had been damaged, and that its customers purchased both the infringed and the infringing products, the burden shifted to the infringer, Mastercraft, to prove that the customers of Chestertown to whom it sold would not have acquired from Stevens alone all of the yardage they purchased had there been no infringement.

 Regarding the second plausible theory, we believe that, at the least, Stevens should be able to recover lost profits based upon the difference between its actual sales of Chestertown during the period in which it was forced to compete with the infringing fabrics and Stevens's average sales figures for its remaining fabric products. This approach was recently taken in a copyright infringement suit involving competing sales of infringing record albums. *See Big Seven Music Corp. v. Lennon*, 554 F.2d 504 (2d Cir. 1977) (comparing sales of infringed album with sales of contemporary albums by same performer). We believe it more appropriate to compare sales of Chestertown to Stevens's sales for all of its fabrics *not including* Chestertown, since the Chestertown figures were clearly affected by competition with the infringing items, and since the object of the damages inquiry is to determine what sales probably would have been made without the infringement. Therefore, under this theory, the district court could award Stevens lost profits based upon the difference between the 4% increase in Chestertown sales in 1979 and the 30% sales increase in Stevens's other fabric lines, and the difference between the 64% decline in Chestertown sales in the first six months of 1980 and the 12% decline is Stevens's other products during that period.

Thus we must remand to the district court to determine the amount of damages. Under the first of the two foregoing measures, damages would be awarded in the amount of Stevens's lost profits for additional sales of Chestertown to those of its customers who also purchased the infringing fabrics, less profits on sales which Mastercraft proves that Stevens would not have made. The measure under the alternative theory would be lost profits based upon the difference between Chestertown sales in the period in question and Stevens's average sales of its other fabric products. Having calculated damages according to these two alternative measures, the court should award to Stevens whatever sum proves to be greater.

Finally, upon remand, the court should consider an additional award of damages based upon the Mastercraft invoices introduced by Stevens which bear dates subsequent to the entry of the injunction. Mastercraft argues on appeal that Stevens did not ask the district court to award these damages, but the trial record clearly refutes this position. Stevens entered these invoices into evidence and asked questions of Mastercraft employees concerning them. Mastercraft obviously saw the potentially damaging nature of these invoices for it responded by eliciting testimony suggesting that the dates on the invoices were billing dates rather than dates of delivery. The district court, however, made no findings as to these sales. With respect to any sales referred to in these invoices which Mastercraft cannot establish as having been made prior to the preliminary injunction, the total amount of the revenues received by Mastercraft from these sales should be awarded to Stevens.

Order modified and remanded for further proceedings consistent with this opinion.