754 F.2d 467
 1985 Copr.L.Dec. P 25,756
 Tevin ABESHOUSE and Matthew Abeshouse, d/b/a Amity Products,
Ltd., Plaintiffs-Appellees-Cross-Appellants,
v.
ULTRAGRAPHICS, INC., Howard Feist, Richard Calio, and
Davidson and McKirdy Co., Inc., Defendants,
Richard Calio, Defendant-Appellee,
Ultragraphics, Inc., Howard Feist and Davidson and McKirdy
Co., Inc., Defendants-Appellants, Cross-Appellees.
 Nos. 480, 481 and 676, Dockets 84-7599, 84-7617 and 84-7663.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 5, 1984.
Decided Feb. 7, 1985.
 
 Wesley W. Horton, Hartford, Conn. (Moller, Horton & Fineberg, William R. Moller, Robert M. Shields, Jr., Hartford, Conn., of counsel), for defendant-appellant, cross-appellee, Davidson and McKirdy Co., Inc.
 Lois B. Tanzer, Hartford, Conn. (O'Brien & Tanski, Hartford, Conn., of counsel), for defendants-appellants-cross-appellees, Ultragraphics, Inc., and Howard Feist.
 Edward F. O'Connor, New Haven, Conn. (DeLio & Libert, Anthony F. DeLio, New Haven, Conn., of counsel), for plaintiffs-appellees-cross-appellants Tevin Abeshouse and Matthew Abeshouse.
 Before FEINBERG, Chief Judge, and OAKES and NEWMAN, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 Defendants Ultragraphics, Inc., and Davidson and McKirdy Co., Inc. (D & M) appeal from a judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, J., entered after a jury trial, finding appellants liable for infringing the copyright of plaintiffs-appellees Matthew and Tevin Abeshouse on a poster entitled "The Cube Solution." Appellants were found jointly and severally liable for infringement in the amounts of $55,368 against Ultragraphics and $2,441.53 against D & M; on appeal, they challenge only the jury's assessment of damages and do not appear to contest the jury's finding of infringement. In addition, the Abeshouses cross-appeal from the district court's denial of their motions for summary judgment and judgment notwithstanding the verdict against defendant-cross-appellee Howard Feist and defendant-appellee Richard Calio, from the denial of their motion for the alteration or amendment of the judgment with respect to these individual defendants and from the denial of their motion for attorney's fees against appellant D & M. For the reasons stated below, we modify the judgment of the district court with respect to the damages awarded plaintiffs-appellees for infringement and remand the case for a new trial limited to the issue of those damages, unless plaintiffs-appellees agree to remittiturs set forth below. We affirm the judgment of the district court in favor of Calio and Feist and the court's refusal to tax D & M with attorney's fees.
 
 I. Facts
 
 2
 In September 1981, Tevin and Matthew Abeshouse obtained a copyright for a large poster entitled "The Cube Solution," which described in great detail the solution to the popular puzzle known as "Rubik's Cube." Shortly before, Tevin Abeshouse, acting for Amity Products, Ltd.--the partnership under whose name he and his brother Matthew did business--entered into an exclusive distribution agreement with Ultragraphics, which was represented by its president, Richard Calio. The agreement took effect immediately and ran until December 31, 1981; under it, Ultragraphics became the exclusive North American distributor of "The Cube Solution" poster, which would be supplied by Amity at the rate of $0.90 per poster for the first 10,000 posters and $0.75 per poster thereafter.
 
 
 3
 This arrangement, however, soon broke down. In early October, apparently fearing that Amity would be unable to provide Ultragraphics with enough posters to meet customer demand, Calio placed an order with D & M, a printer, for 20,000 posters. Although these posters were slightly modified, they were substantially based on "The Cube Solution" poster. Calio also ordered two "separations" (negatives), to be used in the production of the poster overseas. It appears that D & M delivered 21,500 posters to Ultragraphics and that the latter distributed them at a wholesale price of $2.00 per poster until it had exhausted its supply. D & M also provided the two separations to Ultragraphics, which shipped them to two English publishing companies; for these separations, Ultragraphics received $2,500 credited to its account. At the expiration of the agreement with Ultragraphics, the Abeshouses entered into an agreement licensing Ideal Toy Co. to produce and sell their poster.
 
 
 4
 In September 1982, plaintiffs Abeshouses brought suit against Ultragraphics, Calio and D & M for copyright infringement, unfair competition, breach of contract and unjust enrichment. Thereafter, plaintiffs amended their complaint to add Howard Feist, sole beneficiary of a trust that owned all of the stock of Ultragraphics, as a defendant. Following the district court's refusal to grant plaintiffs' motion for summary judgment, the case was tried before a jury. On the copyright infringement claim, the jury found Ultragraphics and D & M jointly and severally liable for $55,368 and $2,441.53 respectively, and it found against Ultragraphics for breach of contract in the amount of $22,513.18.[1] In addition, the jury returned verdicts in favor of Calio and Feist. The district court entered judgment in accordance with these verdicts, denying plaintiffs' motion for judgment against Calio and Feist notwithstanding the verdict and plaintiffs' motion to amend the judgment in this regard. The district court awarded attorney's fees pursuant to 17 U.S.C. Sec. 505 against Ultragraphics but refused to do so against D & M. These appeals and the cross-appeal followed.
 
 II. The Appeal of Ultragraphics
 
 5
 The Copyright Act of 1976 entitles a copyright owner to choose between statutory damages, as defined in 17 U.S.C. Sec. 504(c), or "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages," 17 U.S.C. Sec. 504(b). In this respect, the 1976 Act clearly departs from the previous copyright statute, under which a copyright holder could receive a cumulative award of his own damages, including profits the owner would have earned on lost sales, and the infringer's actual profits, regardless of the latter's relationship to the holder's damages. See Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409, 413 (2d Cir.1970), cert. denied, 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971). The House Report that preceded the 1976 Act reasoned:
 
 
 6
 Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act. Where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively, since in effect they amount to the same thing. However, in cases where the copyright owner has suffered damages not reflected in the infringer's profits, or where there have been profits attributable to the copyrighted work but not used as a measure of damages, subsection (b) authorizes the award of both.
 
 
 7
 H.R.Rep. No. 1476, 94th Cong., 2d Sess. 161, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5777.
 
 
 8
 In reviewing an award made under Sec. 504(b), we must therefore ensure that it was not based upon undue speculation, see Stevens Linen Associates v. Mastercraft Corp., 656 F.2d 11, 14 (2d Cir.1981), and that it does not entail the double-counting of profits and damages expressly barred by that provision. See Taylor v. Meirick, 712 F.2d 1112, 1119-22 (7th Cir.1983). Ultragraphics argues that the jury engaged in both undue speculation and improper double-counting in finding it liable for $55,368.
 
 
 9
 With regard to the profits component of Sec. 504(b), we believe that the jury had before it a sufficient basis from which to calculate Ultragraphics' profits from sales of the modified "Cube Solution" posters produced by D & M. While Calio testified that he had ordered 20,000 of these posters, Robert Davidson, the president of D & M, recalled having actually delivered 21,500; the jury was entitled to use the larger number in computing Ultragraphics' profits. Since Calio testified that Ultragraphics had distributed all of the "Cube Solution" posters in its inventory, and the evidence suggested that the wholesale price for these posters was $2.00 per poster, the jury could fairly calculate Ultragraphics' gross revenues from the infringing posters to be $43,000. Once a copyright owner has shown evidence of an infringer's gross revenues, Sec. 504(b) places upon the infringer the burden of proving his deductible expenses.[2] Ultragraphics met that burden here by presenting evidence that its printing costs were $7,932. The jury thus could have found that Ultragraphics' profits on infringing posters distributed domestically were $35,068. Adding to this sum the $2,500 in credit that Ultragraphics received for the separations it sold to the English publishers, but deducting the $300 that Ultragraphics paid D & M for these separations, the jury was entitled to fix Ultragraphics' profits from infringement at $37,268.
 
 
 10
 Since the jury found Ultragraphics liable for $18,100 beyond this amount, we may assume that the additional amount represents the jury's assessment of the actual damages suffered by appellees. Appellees argue that the jury's award of $55,368 against Ultragraphics represents actual damages, in the form of compensation for profits appellees would have earned by selling 20,000 of their own posters directly to the public for between $4.50 and $5.50. However, during the period in which Ultragraphics sold most of the infringing posters, appellees were bound by the agreement making Ultragraphics the exclusive distributor of "The Cube Solution" poster in North America. Furthermore, upon the expiration of this agreement, appellees granted Ideal Toy Co. a two-year license to produce and market the poster. Appellees failed to present any evidence that under these two agreements they would have been allowed to make direct sales themselves or that, even if permitted, they would have been equipped to do so. Similarly, appellees failed to offer any evidence suggesting they might actually have done business in foreign markets. See Stevens Linen, supra, 656 F.2d at 14-15; Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194, 196 (2d Cir.1964).
 
 
 11
 Appellees also contend that the jury awarded them actual damages, by compensating them for "damage to the reputation of the posters resulting from the inferior quality of the infringing posters" and for damage to their ability to sell their posters in the future caused by the absence of a copyright notice on the infringing posters. However, appellees did not offer any proof that the terms of their two-year exclusive license to Ideal Toy had been affected by Ultragraphics' conduct; nor did appellees make any effort to assess the marketability of their copyright during any time following that sale. These claims were thus too speculative to support any award of actual damages.
 
 
 12
 The only actual damages for which appellees did adduce sufficient evidence were for the profits they would have earned on sales to their distributor, Ultragraphics, had Ultragraphics not sought out an alternative source of supply for "The Cube Solution" posters. If appellees, rather than D & M, had supplied Ultragraphics with 21,500 posters pursuant to the exclusive distribution agreement, appellees would have received $0.75 per poster. Out of this sum, they would have had to pay printing costs that the jury could have found to be as low as $0.22 per poster, leaving appellees with damages in the form of lost profits of $11,395. In charging Ultragraphics with these damages, the jury would not have been engaging in the double-counting forbidden by Sec. 504(b), even though the jury also awarded to appellees Ultragraphics' profits of $37,268. Double-counting may occur when an infringing seller has to disgorge profits on sales that a copyright holder might have made and for which he may therefore claim damages in the form of lost profits.[3] But here, appellees could not have sold their posters domestically to anyone but their exclusive distributor, Ultragraphics, at $0.75 apiece. Ultragraphics sold to wholesalers at $2.00 per poster. Appellees could not properly have made the latter sales and therefore cannot claim any lost profits on them. Thus, requiring Ultragraphics to disgorge to appellees its profits on those sales contains no element of double-counting, even though appellees are also recovering damages of $11,395.
 
 
 13
 In the absence of any consideration of joint and several liability, appellees thus appear to have been entitled to an award of only $48,663 against Ultragraphics. This figure represents the total of Ultragraphics' profits of $37,268 and appellees' damages of $11,395. Since appellees were awarded $55,368 by the jury, a remittitur would therefore seem appropriate. The precise amount of any remittitur, however, cannot be determined without an examination of the extent to which Ultragraphics shares joint liability with D & M.
 
 
 14
 III. The Appeal of D & M and the Joint and Several Liability of Both Appellants
 
 
 15
 The jury found D & M liable for $2,441.53, an amount D & M concedes to be the profits it gained producing the infringing posters for Ultragraphics. The essence of D & M's appeal is that the jury should not have found D & M and Ultragraphics jointly and severally liable both for this sum and for the $55,368 charged to Ultragraphics. For reasons indicated below, this argument is correct.
 
 
 16
 Section 504(b) was designed to serve the dual purposes of compensating a copyright owner for his actual losses and preventing infringers from unfairly benefiting from their wrongful acts. See H.R.Rep. No. 1476, supra. The section appears to require no departure from the rule prevailing under the predecessor provision that a co-infringer ordinarily may be held jointly liable only for the actual damages suffered by a plaintiff copyright holder, not for the illegal profits of his fellow infringers. See MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2d Cir.1981); Sammons v. Colonial Press, Inc., 126 F.2d 341, 344-47 (1st Cir.1942). Exceptions to this general rule may be appropriate only where the infringement was not innocent or where the defendants "engaged in a partnership, joint venture, or similar enterprise." 3 M. Nimmer, Nimmer on Copyright Sec. 12.04[C], at 12-50 to -51 (1984); see Sammons, supra, 126 F.2d at 345.
 
 
 17
 In this case, the jury was not instructed on either of these limited exceptions. Moreover, it is clear that the evidence would not have supported a finding that Ultragraphics and D & M were joint venturers. D & M was simply an independent contractor that, after receiving payment for printing the infringing poster at Ultragraphics' request, retained no further interest in Ultragraphics' marketing activities. We have already determined, see part II, supra, that if the jury's award is to stand, $37,268 of the total must be considered profits attributable to Ultragraphics. This amount could not properly be chargeable to D & M. In sum, while we find that the jury might fairly have found appellants jointly liable for appellees' actual damages, we conclude that the verdict exposing D & M to joint liability for the entire award against Ultragraphics was excessive as a matter of law. For similar reasons, the jury verdict that Ultragraphics is jointly liable for the $2,441.53 in profits earned by D & M cannot stand.
 
 
 18
 This does not necessarily leave D & M liable merely for the $2,441.53 in profits gained by it from the infringement. As we have already held, one component of the sum that Ultragraphics would owe after remittitur would be appellees' actual damages of $11,395, representing the profits that appellees would have made but for the infringement. For these, under the jury's verdict, D & M must be held jointly liable. However, because of Sec. 504(b)'s bar against double counting, this $11,395 award of damages to appellees must be in lieu of, rather than in addition to, the $2,441.53 verdict against D & M since, as noted above in note 3, appellees lost these profits on the same sales as those on which D & M gained its wrongful profit of $2,441.53. But appellees are certainly entitled to the larger of the two figures. See Taylor v. Meirick, supra, 712 F.2d at 1120; Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir.1977). While D & M is thus to be jointly liable for the actual damages of appellees, we do not believe that the purposes of the Copyright Act would be served if, in the event appellees seek to recover this entire amount from Ultragraphics, D & M were permitted to escape with no obligation to disgorge its illegal profits of $2,441.53. Consequently, we hold that D & M must be solely liable for at least $2,441.53 of the $11,395 charged against it and Ultragraphics jointly. In essence, the portion of D & M's liability for which it is jointly liable with Ultragraphics is thus reduced to $8,953.47.
 
 
 19
 We therefore hold that unless appellees agree to remit $46,414.53 of the $55,368 damages with which D & M has been jointly charged, thus leaving a joint liability for D & M of $8,953.47, a new trial on the question of the joint award against D & M must be held. D & M remains solely liable for $2,441.53.
 
 IV. The Cross-Appeal of the Abeshouses
 
 20
 In their cross-appeal, Tevin & Matthew Abeshouse seek to overturn the jury's failure to find either Calio or Feist liable for copyright infringement. First, the Abeshouses claim that the district court erred in refusing to grant them summary judgment on the issue of the liability of Calio and Feist. However, the district judge's denial of the Abeshouses' motion was based upon the court's acceptance and approval of a recommended ruling issued by Magistrate F. Owen Eagan. Since appellees-cross-appellants failed to file specific, written objections to this recommendation, pursuant to Fed.R.Civ.P. 72(b), they must be deemed to have waived their right to challenge the court's ruling on appeal. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir.1983).
 
 
 21
 Appellees-cross-appellants also assign error in the district court's denial of their motion for judgment notwithstanding the verdict on the liability of Calio and Feist. The district court's ruling was grounded exclusively upon appellees' failure to have earlier moved in timely fashion for a directed verdict. The court's insistence upon adherence to this procedural requirement was fully in accordance with Fed.R.Civ.P. 50(b). Although in the interest of justice this court has mitigated the harshness of this default rule on occasions where it operated to deprive a "deserving litigant" of any form of relief, Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 817 (2d Cir.1970); see Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54-55 (2d Cir.1978), we decline to do so here, where appellees have hardly been left without compensation for their injury. We therefore affirm the district court's refusal to grant appellees judgment n.o.v. on this issue. We also find that the district court acted within its discretion in denying appellees' motion under Fed.R.Civ.P. 59(e) that the judgment be altered or amended with respect to the liability of Calio and Feist. A Rule 59(e) motion "may not be granted where to do so would undermine the jury's fact-finding role and trample on the defendant's seventh amendment right to a jury trial." Robinson v. Watts Detective Agency, 685 F.2d 729, 742 (1st Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983); 6A J. Moore, Moore's Federal Practice p 59.12, at 59-288 (1983).
 
 
 22
 Finally, we find that the district court did not abuse the discretion given to it by 17 U.S.C. Sec. 505 when it refused to award attorney's fees against D & M. The court reasoned that D & M had acted at the direction of Ultragraphics, had made only a small profit from the infringement and had diligently pursued settlement. We cannot say that the court should not have been swayed by these considerations.
 
 V. Conclusion
 
 23
 On the appeal by Ultragraphics and D & M, the judgment of the district court is modified and the case is remanded for a new trial limited to the issue of damages, unless appellees Tevin and Matthew Abeshouse agree to remit any amounts over $46,221.47 against Ultragraphics and over $11,395 against D & M, with Ultragraphics and D & M jointly liable for $8,953.47 of these sums and D & M remaining solely liable for $2,441.53. Appellees are not entitled to more than a total of $48,663 from appellants. On the cross-appeal, we affirm the judgment of the district court in favor of Calio and Feist and the court's refusal to tax D & M with attorney's fees.
 
 
 
 [1]
 Ultragraphics does not appeal from the judgment of $22,513.18 entered against it for posters delivered by the Abeshouses but not paid for
 
 
 [2]
 The relevant portion of Sec. 504(b) states:
 In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.
 
 
 [3]
 Double-counting would occur in this case, for example, if appellees were to recover both the profits D & M made on its sales to Ultragraphics and the profits appellees lost because Ultragraphics sought out D & M as an alternative supplier