**CHRISTUS GARDENS, INC.**

v.

**BAKER, DONELSON, BEARMAN & CALDWELL, A Professional Corporation, et al.**

Court of Appeals of Tennessee, at Nashville.

Assigned on Briefs Oct. 24, 2005.

April 18, 2006.

Permission to Appeal Denied by Supreme Court Oct. 16, 2006.

---

John S. Bryant, Clisby Hall Barrow and Kathryn Hays Sasser, Nashville, Tennessee, for the appellants Baker, Donelson, Bearman & Caldwell, A Professional Corporation, and Stephen G. Anderson.

George H. Nolan and Joseph G. Degaetano, Nashville, Tennessee, for the appellee, Christus Gardens, Inc.

## OPINION

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

This interlocutory appeal involves a client's malpractice claim against a law firm and attorney as a result of the attorney's failure to file a timely notice of appeal in a federal copyright case. The trial court denied the law firm's Motion for Summary Judgment as to Causation, finding that the appeal would have been successful had counsel filed a timely notice. We granted interlocutory appeal to deter-mine as a matter of law whether the appeal would have been successful. We affirm the judgment of the trial court.

Baker, Donelson, Bearman and Caldwell, P.C. and Stephen G. Anderson ("Baker Donelson") bring this appeal from the trial court's denial of Baker Donelson's Motion For Final Judgment on Issue of Causation, which it filed challenging Christus Gardens' claim for malpractice. The alleged malpractice occurred when Baker Donelson, while defending Christus Gardens' in a federal copyright action, failed to file a timely notice of appeal. In denying Baker Donelson's motion, the trial court also granted a Motion for Interlocutory Appeal pursuant to Tennessee Rule of Appellate Procedure 9. We likewise granted the interlocutory appeal to determine "whether Christus Gardens would have prevailed on appeal in the copyright case had a timely notice of appeal been filed." The notice would have set in motion Christus Gardens' second appeal in the copyright infringement action brought by Ronald Cotter ("Mr.Cotter"). Mr. Cotter filed suit against Christus Gardens alleging several instances of copyright infringement and seeking both statutory and actual damages.[1]

Christus Gardens operates a tourist attraction in Gatlinburg, Tennessee. The attraction's centerpiece is a six ton marble sculpture depicting the face of Christ and known as the "Christus Stone." In 1986, Mr. Cotter created a book-end size sculp-

---

1. Section 504 of the Copyright Act of 1976 provides a choice of two remedies: "actual damages" and "statutory damages." The actual damages remedy addresses itself to the actual injury that a plaintiff can prove results from the defendant's infringement of the copyright. The statutory remedy is available when the plaintiff can prove infringement of a copyright, and while in the words of the stat-ute, the trial court can consider the actual injury caused by the infringement and the profits lost thereby, the amount to be awarded is set out in the statute with the uppermost bound of the range being $100,000 for "willful infringement." 17 U.S.C. § 504(c) (1998). The statute has since been amended to provide $150,000 in statutory damages. *See* Pub.L. no. 106–60

ture inspired by the "Christus Stone." Mr. Cotter did not register a copyright for his sculpture until August 10, 1992; however, prior to that time he had offered his work to Christus Gardens for resale to the public in its gift shop. As the sixth circuit opinion relates:

> During three different periods—before August 1992 (hereinafter "candle sales"), from May to August in 1996 (hereinafter "Wo–Di sales"), and in September 1996 (hereinafter "Leon Molds sales")—Christus sold items that may have been copied from Cotter's work. During the candle sales before 1992, Christus sold wax candles in its shop with an impression of the face in the Christus stone similar to Cotter's work. Cotter asked Christus to stop selling them and Christus complied. Following the incident, Cotter registered his work with the Register of Copyrights on August 10, 1992. On August 17, 1992, he was issued Registration No. VA–538–843 for the work he created called "Miracle Face."
>
> During the Wo–Di sales in the summer of 1996, Joe Waggoner ("Waggoner"), the manager of Christus, approached Wo–Di Manufacturing, Inc. about producing a small likeness of the Christus stone. Christus subsequently sold this Wo–Di replica alongside Cotter's in 1996. Cotter complained to Christus and then contacted Wo–Di, who agreed to stop making replicas. Finally, during the Leon's Molds sales in 1996, Christus began to sell ceramic pieces made by Leon's Molds that were similar to Cotter's work. Cotter again complained to Christus and contacted Leon's Molds, who also agreed to stop making the replicas.
>
> Following the Leon's Molds sales Cotter filed this copyright infringement action against Christus on March 10, 1997. He sought an injunction and both actual and statutory damages for the infringement, which he originally alleged had begun with the candle sales prior to his copyright registration. Cotter later amended his complaint to omit any reference to the pre-registration candle sales. Cotter made this amendment to preserve his right to elect statutory damages under the Copyright Act, which are only allowed for infringements that commenced after the effective date of the copyright registration. *See* 17 U.S.C. § 412.

*Cotter v. Christus Gardens,* No.99–5996, 238 F.3d 420 (Table), 2000 WL 1871698 at \*1 (6th Cir. Dec.12, 2000) (footnote omitted).

After the amendment, the Judge to whom the case was originally assigned granted Christus Gardens' motion for partial summary judgment on the statutory damages claim. After several procedural actions and including the substitution of a different trial judge, the summary judgment motion was withdrawn and the case submitted to a jury on both actual and statutory damages claims. In order to recover the statutory remedy for willful infringement, Mr. Cotter was required to show a continued infringement of a known registered copyright. 17 U.S.C. §§ 412, 504. In the absence of said proof, Mr. Cotter was free to pursue the actual damages remedy of section 504; however, this section required Mr. Cotter to make an affirmative election as to whether he would pursue the actual damages course or proceed with the statutory remedy. No such election was made, and the case was tried by a jury on both the actual and statutory claims. After consideration, the jury awarded $153,000 in actual damages and

awarded $100,000 statutory damages for willful infringement.

Christus Gardens moved for a new trial, or, in the alternative for judgment as a matter of law pursuant to Federal Rules of Civil Procedure Rule 50. The trial court denied the motion, and Christus Gardens appealed to challenge the validity of the actual damage award as well as the award of statutory damages. The Sixth Circuit reversed the award of actual damages and held that the jury had been allowed to consider Cotter's lost profits in this assessment contrary to the provision of section 17 USC section 504. The Court of Appeals held that, in light of the improper verdict, the refusal to grant a new trial amounted to an abuse of discretion. Nevertheless, the court affirmed the submission of the statutory damages claim to the jury. Baker Donelson petitioned on behalf of Christus Gardens for en banc review of the decision. The petition was denied and the cause remanded to the district court. Upon remand, Mr. Cotter elected statutory damages. Instead of conducting a new jury trial, the district court entered judgment in favor of Mr. Cotter for $100,000 in statutory damages. Christus Gardens challenged the trial court's action and asked that Baker Donelson perfect it's appeal by filing a notice of appeal. It is undisputed that, despite Baker Donelson's initial statements to their client to the contrary, a notice of appeal was never filed from the proceedings on remand.

After being forced to pay the statutory damages and attorney's fee, Christus Gardens filed its complaint against Baker Donelson in Davidson County Circuit Court, alleging in pertinent part that the failure to file the notice of appeal constituted malpractice. On December 5, 2003, Baker Donelson filed a Motion for Final Judgment on the Issue of Causation. The trial court denied the motion and this interlocutory appeal followed. In its motion, Baker Donelson urged the trial court that even if a timely notice of appeal had been filed, Christus Gardens would not have succeeded in securing a new trial on statutory damages. The malpractice defendant argued that the Sixth Circuit's opinion "explicitly mandated" Mr. Cotter's election of Statutory damages consistent with the Second Circuit's ruling in *Oboler v. Goldin*, 714 F.2d 211 (2nd Cir.1983). The court, Baker Donelson argued, had only required a new jury trial as to actual damages. The malpractice plaintiff Christus Gardens argued that as a matter of law it was entitled to a jury trial as to both Cotter's qualification for a statutory award and the amount of that award, and that the failure to file a timely notice of appeal deprived Christus Gardens of the new trial to which it was entitled. The Circuit Court of Davidson County concluded that the U.S. Supreme Court's decision in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) required a new trial as to the statutory claim. Nevertheless, the court granted permission for interlocutory appeal. This Court entered its order as well granting interlocutory appeal for the sole purpose of determining whether Christus Gardens would have prevailed in a second appeal before the Sixth Circuit. Our inquiry requires that we examine in depth the Sixth Circuit's ruling as well as the viability of the original jury trial upon remand to federal court.

The language from that opinion suggests that although a new trial should have been granted as to actual damages, the original submission of statutory damages to the jury was proper. Christus Gardens raised two issues in the federal appeal. As to the

first of Christus Gardens' issues on appeal, the failure of the trial court to grant a new trial as to actual damages, the Sixth Circuit employed the following reasoning:

A plaintiff is entitled to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act." H.R.Rep. No. 94–1476, at 161 (1976), *reprinted in* 17 U.S.C.A. § 504, at 146 (West 1996). However, "[a] plaintiff may not recover its full lost profits plus all of the defendant's profits, for this would constitute a forbidden double recovery." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02A, at 14–10 (2000) (hereinafter "Nimmer on Copyright"). "Actual damages are generally calculated with reference to the loss in the fair market value of the copyright, often measured by the profits lost as a result of the infringement." *Data General Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1170 (1st Cir.1994); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 512 (9th Cir.1985) (" '[a]ctual damages' are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement" under the Copyright Act of 1909).

Christus contends that, at most, Cotter is entitled to an actual damages award of $9,005.13 based on the lost sales Cotter would have made but for Christus' infringement in 1996, plus all of the profits made by Christus on the sale of the Wo–Di and Leon's Molds infringing products. Christus' profit on the Wo–Di sales (there was no profit on the Leon's Molds sales) was $6,902.37. (J.A. at 339). Christus also contends that Cotter's lost sales due to the infringement were no more than $2,102.76. *See* Brief for Appellant at 21. Christus calculated this $2,102.76 figure by multiplying Cotter's profit per piece, which they estimated to be at most $2.58, times the 813 infringing pieces sold by Christus. *See Id.*

Although the jury's verdict does not indicate how they calculated actual damages of $153,355, it is clear that the jury's award is based on more than the mere $9,005.13 from Cotter's lost profits during the Wo–Di and Leon's Molds sales and Christus' profits gained from those infringing sales. Instead, it appears that the jury also considered Cotter's alleged lost future profits due to the infringement. Cotter testified that he earned roughly $30,000 a year in profit from his sales to Christus in 1997 and 1998. (J.A. at 323–24). Cotter could also expect to work for another five years since he was about sixty years old at the time of trial. (J.A. at 336, 363). Further, Cotter's attorney clearly asked the jury to consider lost future sales in his closing argument. (J.A. at 338).

Christus is correct that actual damages do not normally include future losses. *See Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 470–71 (2d Cir.1985); *see also* 4 Nimmer on Copyright, *supra* p. 6, § 14.02[A], at 14–8 ("The primary measure of recovery of actual damages is based upon the extent to which the market value of the copyrighted work, at the time of infringement, has been injured or destroyed by such infringe-

ment.") Although there is authority suggesting that future losses may be considered when determining actual damages, *see Mary Ellen Enters. v. Camex, Inc.,* 68 F.3d 1065, 1070 (8th Cir. 1995) (suggesting that future losses may be considered when determining actual damages); *Abend v. MCA, Inc.,* 863 F.2d 1465, 1479 (9th Cir.1988), *aff'd on other grounds sub nom, Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (same); *Abeshouse,* 754 F.2d at 471 (denying lost future profits because they were speculative based on the evidence at trial, not because they were barred as a matter of law); *see also* Alois Valerian Gross, Annotation, *Measure of Damages and Profits to Which Copyright Owner is Entitled under 17 U.S.C.A. § 504(b),* 100 A.L.R. Fed. 258, at § 19 (1990) (discussing *Abeshouse* and future damages), we need not decide today whether future lost profits are recoverable as a matter of law because Cotter failed to prove that he is entitled to them as a matter of fact. Despite his testimony, Cotter did not demonstrate that he had any legal entitlement to any future contracts with Christus. Thus, it is sheer speculation whether Cotter would have earned anything, let alone $30,000 a year for the next five years. Furthermore, the jury was not specifically instructed to award future lost profits. Thus, on this record, the jury verdict clearly exceeded the maximum a jury could find compensatory for Cotter's loss. The district court abused its discretion in refusing to grant Christus' motion for a new trial.

*Cotter,* 2000 WL 1871698 at *3.

We note that the particular posture of this case before the sixth circuit on appeal required Christus Gardens to argue against not only the trial court's denial of its new trial motion as to actual damages, but also the submission of statutory damage issue to the jury in the absence of a proper election on Cotter's part.

Said the Court:

We review the trial court's denial of a motion for a new trial for an abuse of discretion. *See Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 397 (6th Cir. 1993). A verdict is not excessive unless it clearly exceeds "the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Id.* (ADEA case) (quotations omitted); *see also Brewer v. Hustler Magazine, Inc.,* 749 F.2d 527, 529 (9th Cir.1984) ("We will not disturb an award of damages unless it is clearly unsupported by the record" in a copyright infringement case). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, or (3) the result of a mistake, we must let the award stand." *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.,* 948 F.2d 271, 278 (6th Cir.1991)(breach of contract case) (citations omitted).

*Cotter,* 2000 WL 1871698 at *1.

The court concluded that the district judge had abused his discretion by refusing to grant a new trial as to actual damages. In reversing the denial of a new trial, the court specifically declined to determine whether Cotter was entitled to lost profits as a matter of law "because Mr. Cotter failed to prove that he is entitled to them as a matter of fact."

As to Mr. Cotter's failure to properly elect between the two types of damages at the first trial and whether he may elect statutory damages on remand, the application of the opinion becomes problematic.

Relying on *Oboler* for the proposition that a judgment appealed and reversed as to damages is not final for the purpose of terminating the election period under the statute, the court determined that Cotter had the right to elect statutory damages when the case was remanded for a new trial. The language of *Oboler* suggests that Cotter's election of statutory damages on remand would not require a new trial:

> Remedies for infringement under the Copyright Act of 1976 may be pleaded in the alternative, 17 U.S.C. § 504(a), as plaintiffs in this action did plead them, but the copyright owner is to make an election before final judgment. *Id.* (c)(1). Election of statutory damages precludes recovery of actual damages and profits. *Id.* Because we vacate the order as to damages, Oboler and Nostalgia Records, Inc., may make the election which so far as the record indicates they failed to make at the first trial. The determination of statutory damages, including a fivefold increase in the maximum award if the plaintiff proves and the court finds willful infringement, is assigned by statute to the judge rather than the jury. *Id.* (c)(1), (2); 3 M. Nimmer, Nimmer on Copyright § 14.04[C], at 14–31–14–32 (1982) ("the better view"); *but see Gnossos Music v. Mitken, Inc.,* 653 F.2d 117 (4th Cir.1981). Thus, election of statutory damages would not necessitate a new trial.

*Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983)

The court framed the next phase of its inquiry as a consideration of Cotter's qualification for statutory damages as a matter of law. This discussion focused on the trial court's reversal of its prior dismissal of the statutory claim:

> To answer this question, we must first consider whether Judge Collier properly reversed Judge Jarvis' prior dismissal of the statutory claims. Clearly, Judge Collier had the authority to reverse Judge Jarvis' prior dismissal of the statutory claims because a district court has continuing jurisdiction over its orders prior to final judgment. *See e.g. Dahl v. UHS, Inc.,* No.88–CV–74477–DT, 1990 U.S.Dist. LEXIS 8737, at *4 (E.D.Mich. March 7, 1990) (unpublished)(district court vacated and reversed its prior decision).
>
> The next question is whether Judge Collier's decision to submit statutory damages to the jury was correct. We review the district court's legal determination that statutory damages be submitted to the jury *de novo.  See Johnson v. Jones,* 149 F.3d 494, 505 (6th Cir.1998).

*Cotter,* 2000 WL 1871698 at *6.

The court cited *Feltner* for the proposition that the Seventh Amendment requires jury trial as to qualification for, as well as amount of, statutory damages:

> The Supreme Court has held that although the Copyright Act does not establish a statutory right to a jury trial to determine statutory damages under § 504(c), the right to a jury trial for that determination is constitutionally required under the Seventh Amendment. *See Feltner,* 523 U.S. at 345, 355, 118 S.Ct. 1279 *see also* 4 Nimmer on Copyright, *supra* p. 6 § 14.04[C][2], at 14–676 (*"Feltner* continues the tradition of Seventh Amendment rulings and accordingly attaches the right to a jury trial to a statutory scheme that Congress affirmatively established without that right."). Accordingly, Judge Collier was correct in finding that the statutory damages claim, including the amount itself, was a jury issue. *See Feltner,* 523 U.S. at 355, 118 S.Ct. 1279.

*Cotter,* 2000 WL 1871698 at \*6.

The court then affirmed the trial court's denial of Christus Gardens' post verdict motion for new trial. Regarding the statutory award, the 6th Circuit provided the following discussion:

> In order for the jury to award Cotter statutory damages of $100,000, they were required to find that Christus willfully violated Cotter's copyright, which began after his copyright registration in 1992. *See* 17 U.S.C. §§ 412, 504(c)(2). Here, the jury specifically found that Christus "willfully" violated Cotter's copyright and awarded $100,000 in statutory damages. However, the parties dispute on appeal whether the candle sales prior to Cotter's copyright registration in 1992 were infringements that commenced prior to registration and therefore disqualify Cotter from receiving statutory damages as a matter of law under § 412.

> This put Christus in the awkward position of arguing that it had infringed upon Cotter's copyright by selling the candles prior to 1992 as a defense to the statutory damages claim, while simultaneously arguing that it did not infringe upon the copyright in 1996 with the sale of the Wo–Di and Leon's Molds items to avoid actual damages. Nevertheless, the jury found that Christus' pre-registration candle sales did not infringe Cotter's copyright, while its post-registration sales of the Wo–Di and Leon's Molds pieces in 1996 were an infringement. (J.A. at 173–74).

> The jury's finding is supported by the trial record. There was no evidence that the candle sales were an infringement because there was no proof that the candles were copied from Cotter's work. By contrast, there was evidence that the Wo–Di and Leon's Molds pieces were directly copied from Cotter's work, rather than merely being similar to it. (J.A. at 273–74, 293–94). Thus, the jury's finding that the pre-registration candle sales were not an infringement while the post-registration Wo–Di and Leon's Molds sales were an infringement that qualified for statutory damages is correct for the purposes of deciding a directed verdict.

> In order to determine whether the pre-registration candle sales disqualified Cotter from receiving statutory damages, the jury also had to decide whether the Wo–Di and Leon's Molds sales were a continuing series of infringements going back to the pre-registration candles sales. If the 1996 infringements began with the pre-registration candles sales, then Cotter would be disqualified from receiving statutory damages for the 1996 Wo-di and Leon's Molds infringements. However, if the pre-registration candle sales were not part of the 1996 infringements, then Cotter would not be disqualified from receiving statutory damages for the post-registration 1996 infringements. Whether or not Cotter qualifies for statutory damages then depends on when the infringement began.

> Our Circuit recently discussed when copyright infringements "commence" for the purposes of qualifying for statutory damages. In *Johnson,* we held that:

> > [The purpose of the Copyright Act] would be thwarted by holding that infringement is "commenced" for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts. Under § 412, statutory damages and attorney's fees are reserved for infringers

who had constructive notice that the work was covered by a valid copyright. . . . If the incentive structure of § 412 is to be properly applied, then [the plaintiff] should not receive the reward of statutory damages, because he did not satisfy the requirement of prompt registration.

Every court to consider this question has come to the same conclusion: namely, that infringement "commences" for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.

*Johnson,* 149 F.3d at 505–06.

Here, the trial judge specifically instructed the jury that Cotter would not qualify for statutory damages if the infringement commenced before the registration date in August 1992. (J.A. at 253–54). The judge also instructed them to determine whether the activities were part of a continuing, ongoing infringement or were separate, distinct acts of infringement. (J.A. at 254). There was a four year gap between the time Christus ceased selling the candles in 1992 and the time it began selling the Wo–Di and Leon's Molds products in 1996. This lack of "continuing" activity supports the jury's finding that Cotter qualified for statutory damages for the 1996 infringements. *Cf. Johnson,* 149 F.3d at 505–06 (finding no copyright infringement where first use of architect's architectural plans occurred in November 1993 prior to registration on December 6, 1993; rejecting architect's argument that each use of his plans was a new act of infringement).

Thus, Cotter may elect statutory damages on remand under *Oboler.*

*Cotter,* 2000 WL 1871698, **7–9.

It is clear from our reading of the Sixth Circuit's opinion, that the only consideration it gave to the statutory award, was to the fact question of when the infringement began. Our reading of the entire section allowing statutory damages for willful infringement suggests that the knowing element is only part of the consideration for the award of statutory damages.

**(c) Statutory Damages.—**

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit edu-

cational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

*(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.*

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U.S.C. 1127).

17 U.S.C.A. § 504(c). (emphasis added).

There is nothing in the jury verdict form that suggests the basis for its calculation of the appropriate amount of statutory damages for willful infringement. This absence, coupled with the same infirmity noted by the circuit court relative to the excessive actual damages award, militates against acceptance of the initial jury verdict as entitling Cotter to elect the jury finding as to the amount of statutory damages *in lieu* of a new trial. In this respect we find the language of *Feltner* instructive:

The right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner. It has long been recognized that "by the law the jury are judges of the damages." *Lord Townshend v. Hughes,* 2 Mod. 150, 151, 86 Eng. Rep. 994, 994–995 (C.P. 1677). Thus in *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the Court stated that "the common law rule as it existed at the time of the adoption of the Constitution" was that "in cases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it." *Id.,* at 480, 55 S.Ct., at 298 (internal quotation marks and citations omitted). And there is overwhelming evidence that the consistent practice at common law was for juries to award damages. See, *e.g., Duke of York v. Pilkington,* 2 Show. 246, 89 Eng. Rep. 918 (K.B.1760) (jury award of £100,000 in a slander action); *Wilkes v. Wood,* Lofft 1, 19, 98 Eng. Rep. 489, 499 (C.P.1763) (jury award of £1,000 in an action of trespass); *Huckle v. Money,* 2 Wils. 205, 95 Eng. Rep. 768 (C.P.1763) (upholding jury award of £300 in an action for trespass, assault and imprisonment); *Genay v. Norris,* 1 S.C.L. 6, 7 (1784) (jury award of £400); *Coryell v.*

*Colbaugh*, [1 N.J.L. 77 (1791)] *supra* (sustaining correctness of jury award of exemplary damages in an action on a promise of marriage); see also K. Redden, Punitive Damages *354 § 2.2, p. 27 (1980) (describing "primacy of the jury in the awarding of damages").

*Feltner*, 523 U.S. at 353–354, 118 S.Ct. 1279.

Baker Donelson argues that the ruling of the Sixth Circuit Court of Appeals upheld both the right of Cotter to elect on remand statutory damages and the amount of such statutory damages ($100,000) as had been set by the jury. While the decision of the Sixth Circuit Court of Appeals is something less than clear, we do not agree with the interpretation asserted by Baker Donelson. In ruling on Christus Gardens' motion for a new trial, the district court held:

### B. Verdict is Against the Clear Weight of the Evidence

Defendant next argues the jury verdict is against the clear weight of the evidence because they held the Lorelei candles were *not* an infringement of Plaintiff's work. Defendant claims it never disputed Plaintiff's allegations the candles were copies of his work, and Plaintiff repeatedly insisted the candles were infringements. Thus the jury's conclusion to the contrary is against the weight of the evidence and resulted from the jury's dislike for the Defendant.

Just because Defendant did not vigorously argue the candles were not infringements does not mean the jury could not find otherwise. The result in the case was largely a matter of which side's testimony was believed by the jury. The jury's decision reflects its credibility choices. Those choices were clearly ones the jury was free to make and, considering the evidence, were reasonable choices. Once the jury made those credibility choices, its verdict is imminently reasonable and consistent with both the law and the evidence.

The Court also notes whether the Lorelei candles are an infringement or not only factors into whether Plaintiff would be entitled to statutory damages. Had the jury found the Lorelei candles were infringements of Plaintiff's work, and these infringements were part of a continuing infringement (in connection with the Leon's Molds and Wo–Di statues), then Plaintiff would not have been entitled to statutory damages. Since Plaintiff has not elected such damages however, the issue is moot.

The Sixth Circuit Court of Appeals held in reversing the jury's award of $153,355 in actual damages:

We need not decide today whether future lost profits are recoverable as a matter of law because Cotter failed to prove that he is entitled to them as a matter of fact. Despite his testimony, Cotter did not demonstrate that he had any legal entitlement to any future contracts with Christus. Thus, it is sheer speculation whether Cotter would have earned anything, let alone $30,000 a year for the next five years.

Having reversed the actual damages award as being speculative and unsupported by the evidence, the court then vacated the trial court's holding that the failure of Cotter to make an election rendered the statutory damages issue moot. The court held that Cotter was not required to elect between statutory damages and actual damages prior to remand stating, "Since Cotter has yet to elect statutory damages,

he may do so on remand. This rule is consistent with the 'final judgment' language of section 504(c)(1), because a remand reopens the case. In effect, Cotter's subsequent election below will come prior to a final judgment on remand."

The appellate court did not specifically approve the amount of the jury verdict as to statutory damages, but did uphold the finding of the jury that Christus' pre-registration candle sales did not infringe on Cotter's copyright and Cotter was thus entitled to statutory damages as opposed to actual damages if he in fact elected statutory damages as his remedy. How and to what degree the basis of the Court of Appeals' reversal as to the amount of the actual damages in this case affected the $100,000 award of statutory damages cannot be gleaned from anything in the record. Indeed, such factors may or may not have affected the amount of the statutory damage award. Under such circumstances justice requires a new trial as to all issues, save the single issue that can be salvaged which is the right of Cotter to elect statutory damages. The issue in this case affected by the reversal of the actual damage amount on the basis that such amount is not supported by the evidence is the amount of the verdict as to statutory damages. In *Williams v. Slade*, 431 F.2d 605 (5th Cir.1970) it was held:

It is also clear, however, that partial new trials should not be resorted to unless no injustice would result. *Gasoline Products Company v. Champlin Refining Company*, 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188; *Washington Gaslight Co. v. Lansden*, 1899, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543; *Korbut v. Keystone Shipping Company*, (5 Cir.1967), 380 F.2d 352; *American Motorists Ins. Company v. Napoli*, (5

Cir.1948), 166 F.2d 24; *Hiltz v. Atlantic Refining Company*, (3 Cir.1945), 151 F.2d 159; *Albright v. McTighe*, W.D.Tenn.1892, 49 F. 817. The rule as stated by the Supreme Court is:

"Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. * * *" *Gasoline Products Co. v. Champlin Refining Co., supra*, 283 U.S. at 500, 51 S.Ct. at 515 (citations omitted).

In other words, a court may properly award a partial new trial only when the issue affected by the error could have in no way influenced the verdict on those issues which will not be included in the new trial. If the decision on the other issues could in any was have been infected by the error then a new trial must be had on all issues.

. . .

The common thread which runs through these decisions is that in each case the court thought as a result of a totality of the circumstances that the issue sought to be excluded by a partial new trial had not been properly determined initially even though the obvious error complained of related to the other issue or issues. A noted commentator has summed up the problem thusly:

"Moreover, if a new trial is granted because of the inadequacy of the verdict and it appears that the verdict was the product of an illegal compromise or other misconduct on the part of the jury, the court must grant a new trial on all the issues and may not limit retrial to damages as the issue of

liability was never properly determined. Conversely, where the damages are excessive and the verdict is the product of passion or prejudice a new trial as to all the issues must be ordered." 6A J. Moore, Federal Practice § 59.06 at 3767 (footnotes omitted).

*Williams,* 431 F.2d at 608–609.

We note that the jury was separately charged on the actual and statutory damage remedies. The jury also entered separate findings in the verdict form. However, just as there was no indication as to what proof the jury relied upon in assessing the actual damage award, the verdict form provides no information as to what the jury considered in awarding the full $100,000. Section 504(c) provides a range of amounts from $750 to the maximum allowable statutory damage award of $100,000. As a result, the issues to be retried as to the actual damages are not clearly distinct from those issues inherent in the statutory damage award. *See Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).

The motion Baker Donelson filed in Davidson County Circuit Court was at its core a motion for summary judgment as to causation. *See* Tenn. R.Civ. P. 56. The grant of summary judgment is only appropriate in the instances we have already well delineated:

Rule 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. *See Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 88 (Tenn.2000); *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). "Courts must view the evidence in the light most favorable to the non-

moving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples,* 15 S.W.3d at 89. "Courts should grant a summary judgment only when both the facts and the inferences to be draw from the facts permit a reasonable person to reach only one conclusion."

*Gibson v. Trant* 58 S.W.3d 103, 107 (Tenn. 2001).

If the Sixth Circuit Court of Appeals had intended to uphold the amount of the jury verdict as to statutory damages in the face of its finding of the total inadequacy of the evidence on which actual damages were predicated, it surely would have said so. Such a course of action would have been strange indeed as it would necessarily encompass a holding that such evidentiary matters could not possibly have affected the $100,000 statutory damage verdict. *Thompson v. Camp,* 167 F.2d 733 (6th Cir.1948).

The judgment of the trial court is in all respects affirmed, and costs of the cause are assessed to Appellants.